NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANTHONY A. PETERPAUL and FRANK PETERPAUL, <br><br> Plaintiffs, <br><br> v. <br><br> GORDON REGER, ET AL., <br><br> Defendants. | Civil Action No.: 07-1312 (JLL) <br><br><br> OPINION |

**LINARES, District Judge.**

This matter comes before the Court by way of motions to dismiss Plaintiffs' Complaint filed respectively by (a) Defendants Gordon Reger and New England Waste, LLC, and (b) Defendants Doremus Ave Recycling and Transfer LLC ("Doremus")[1] and EnviroSolutions, Inc.[2]  The Court has reviewed the parties' submissions,[3] and, for the reasons that follow, grants Defendants' motions.[4]

---

[1] Doremus Ave Recycling and Transfer LLC was improperly pled as "Doremus Ave. Recovery and Transfer, LLC."

[2] The Defendants filed motions to dismiss in lieu of filing answers pursuant to Fed. R. Civ. P. 12(b)(6).

[3] The Court does not consider Plaintiffs' supplemental submissions of June 25, 2007 and July 2, 2007, which were submitted without leave of Court.  Pursuant to L. Civ. R. 7.1(d), when a defendant files a motion to dismiss, the plaintiff may file an opposition to that motion and the defendant may file a reply to the plaintiff's opposition.  No sur-replies are permitted without the Court's permission.  See L. Civ. R. 7.1(d)(6).  Further, Plaintiffs' supplemental submissions rely on documents which the Court may not consider in resolving a motion to dismiss pursuant to Rule 12(b)(6).  See, e.g., Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002).

[4] The Court resolves the pending motions without oral argument pursuant to Fed. R. Civ. P. 78.

## **BACKGROUND**[5]

Plaintiffs, Anthony A. Peterpaul and Frank Peterpaul, were the sole shareholders of Advanced Enterprises Recycling ("Advanced").[6] Advanced held a permit, registration, and license from the New Jersey Department of Environmental Protection ("NJDEP") which allowed Advanced to engage in solid waste disposal and recycling in New Jersey.

Doremus wanted to enter into the solid waste and recycling business. It sought to do so by acquiring the stock of Advanced. On November 1, 2001, Plaintiffs entered into a Stock Purchase Agreement (the "SPA") with Doremus.[7] Pursuant to the SPA, Plaintiffs agreed to sell all of their interest in Advanced to Doremus for a purchase price of $500,000.00. Doremus' obligations under the SPA were guaranteed by its affiliate, New England Waste.

The SPA contains a provision in section 1.1(d), which provides that under certain circumstances, Doremus would have to pay additional compensation (i.e., compensation in addition to the $500,000.00 Doremus gave to Plaintiffs for its stock purchase under the SPA), to Plaintiffs. This additional compensation provision in section 1.1(d) states in relevant part:

> (d)  In the event [Doremus] shall sell a majority of the stock or substantially all of the assets of the business of [Advanced] to an independent third party (unaffiliated with [Doremus]) . . . then and in such event [Doremus] shall pay

---

[5] For purposes of adjudicating the pending motions to dismiss, Plaintiffs' allegations in their complaint are presumed to be true. See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996).

[6] Advanced is not a party to the instant lawsuit.

[7] In adjudicating the instant motions, the Court considers the SPA, which is attached to the motion to dismiss filed by Defendants Reger and New England Waste as "Exhibit A," because it is incorporated by reference into Plaintiffs' complaint. See, e.g., Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S. Ct. 2499, 2509 (2007); Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002).

>   to [Plaintiffs] an additional amount equal to the product of the following:
>
>   (1)   [Advanced's] revenues for the twelve (12) months preceding the sale by [Doremus];[8] times
>   (2)   a factor of 1.5, times
>   (3)   .02
>
>   Equals the Additional Payment due on Sale of [Advanced].
>
>   Example: $10,000,000.00 in [Advanced's] revenues times 1.5 equals $15,000,000.00 times .02 equals $300,000.00.

Further, in an effort to enter the solid waste disposal and recycling business, Doremus entered into leases with Apollo Development and Land Corporation ("Apollo"), a real estate holding company owned by Plaintiffs,[9] which entitled Doremus to use real property owned by Apollo. Apparently, Doremus wanted to construct a solid waste disposal facility on the property.

On June 6, 2006, EnviroSolutions filed a verified petition with the NJDEP seeking approval for the acquisition of the permits, registrations, and licenses held by Advanced.[10] On November 16, 2006, Gordon Reger, the sole shareholder of Doremus, sold all of his interest in

---

[8] Plaintiffs persistently mis-quote section 1.1(d) of the SPA in their submissions to the Court. In paragraph 17 of the complaint and on page three of their opposition brief, Plaintiffs claim that section 1.1(d)(1), which discusses the method for calculating the amount of additional compensation, states that the starting point is "[Advanced's] revenues for the twelve (12) months preceding the sale *of* [Doremus]" (emphasis added). A review of this section indicates that the starting point for calculating additional compensation is "[Advanced's] revenues for the twelve (12) months preceding the sale *by* [Doremus]" (emphasis added). Whether section 1.1(d) requires Doremus to pay Plaintiffs additional compensation upon a sale *by* Doremus of Advanced or upon a sale *of* Doremus is the precise issue this Court must confront. Thus, Plaintiffs' persistent mis-quoting of this section not only appears disingenuous, but is particularly offensive.

[9] Apollo is not a party to the instant lawsuit.

[10] EnviroSolutions' verified petition filed with the NJDEP is attached to Plaintiffs' Complaint as "Exhibit A."

Doremus to EnviroSolutions.[11]

Plaintiffs claim that this transaction between Reger and EnviroSolutions triggered the additional compensation provision of section 1.1(d) of the SPA because Reger's sale of his interest in Doremus necessarily included a sale of Advanced's stock, which was owned by Doremus, to EnviroSolutions. Based on this theory, Plaintiffs commenced the instant cause of action against Defendants Gordon Reger, Doremus, New England Waste, and EnviroSolutions, alleging breach of contract, fraudulent concealment, civil conspiracy, and fraudulent transfer, in the Superior Court of New Jersey, Law Division, Essex County. Defendants Doremus and EnviroSolutions removed the matter to this Court on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332.

Count one of Plaintiffs' Complaint alleges that Doremus breached the SPA. Count two alleges that all Defendants engaged in fraudulent concealment for failing to disclose the transaction between Reger and EnviroSolutions to Plaintiffs. Count three alleges that all Defendants engaged in civil conspiracy for conspiring to defraud Plaintiffs of the additional

---

[11] Again, see supra note 8, Plaintiffs provide misleading information to the Court as to how the transaction between Reger and EnviroSolutions was structured. The parties do not appear to dispute that the November 16, 2006 transaction involved Reger's sale of his interest in Doremus to EnviroSolutions. Plaintiffs admit this in paragraph 34 of the complaint in which they claim that "the sale by Reger to EnviroSolutions should be voided." EnviroSolutions' petition with the NJDEP, which is attached to Plaintiffs' complaint, confirms this at paragraph 2: "[EnviroSolutions] proposes to purchase all of the membership interests in [Doremus], which interests are currently owned by Gordon Reger." However, presumably since it suits Plaintiffs' arguments, Plaintiffs frequently state that the November 16, 2006 transaction involved Doremus's sale of its own stock to EnviroSolutions. See, e.g., Compl., ¶18 ("Doremus sold its stock, along with the stock of Advanced, to defendant EnviroSolutions"); Pl. Br. at 3 (same). Plaintiffs never argue that Doremus actually sold its own stock to EnviroSolutions on November 16, 2006. Instead, Plaintiffs' arguments in this regard are based on the transaction involving a sale by Reger of his interest in Doremus to EnviroSolutions.

compensation they were entitled to pursuant to section 1.1(d) of the SPA, and count four alleges that all Defendants engaged in a fraudulent transfer with respect to the stock transfer between Reger and EnviroSolutions.  In light of the foregoing claims, Plaintiffs seek damages, fees and costs, and ask the Court to void the stock transfer between Reger and EnviroSolutions.

## **LEGAL STANDARD**

The applicable inquiry under Federal Rule of Civil Procedure 12(b)(6) is well-settled. Courts must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party.[12] See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982); Allegheny Gen. Hosp. v. Philip Morris, Inc., 228 F.3d 429, 434-35 (3d Cir. 2000).  However, courts are not required to credit bald assertions or legal conclusions improperly alleged in the complaint.  See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429 (3d Cir. 1997).  Similarly, legal conclusions draped in the guise of factual allegations may not benefit from the presumption of truthfulness.  See In re Nice Sys., Ltd. Sec. Litig., 135 F. Supp. 2d 551, 565 (D.N.J. 2001).

A sound complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1959 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Moreover, "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true."  Id.  Ultimately, however,

---

[12] In doing so, a court may look only to the facts alleged in the complaint and any accompanying attachments, and may not look at the record. See Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1251, 1261 (3d Cir. 1994).

5

the question is not whether plaintiffs will prevail at trial, but whether they should be given an opportunity to offer evidence in support of their claims. Scheuer, 416 U.S. at 236. With this framework in mind, the Court turns now to Defendants' motions.

## LEGAL ANALYSIS

**A.      Breach of Contract**

In order to state a claim for breach of contract under New Jersey law,[13] Plaintiffs must allege: (1) a contract between the parties; (2) breach of that contract; (3) damages flowing therefrom; and (4) that the plaintiff performed its own contractual obligations. See, e.g., Frederico v. Home Depot, No. 06-2266, —F.3d—, 2007 WL 3310553, at *13 (3d Cir. Nov. 9, 2007); Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc., 210 F. Supp. 2d 552, 561 (D.N.J. 2002). The issue in this case is whether Doremus breached section 1.1(d) of the SPA when it failed to pay Plaintiffs additional compensation following Reger's sale of his stock in Doremus, which necessarily included a sale of the stock of Advanced to EnviroSolutions. The Court finds that, accepting Plaintiffs' allegations as true, Plaintiff has failed to establish that Doremus breached the SPA and thus, this claim must be dismissed.

The New Jersey Supreme Court has stated that in interpreting a contract, courts must consider the plain language of the contract and the parties' intent, as demonstrated by the purpose of the contract and any relevant surrounding circumstances. See Highland Lakes Country Club & Cmty. Ass'n v. Franzino, 892 A.2d 646, 656 (N.J. 2006); see also Pharmacia Corp. v. Motor Carrier Servs. Corp., No. 04-3724, 2006 WL 3533881, at *9 (D.N.J. Dec. 7, 2006). However, where the contract terms are clear and unambiguous, there is no room for interpretation and

---

[13] The parties do not dispute that New Jersey law applies to the resolution of the instant motions.

6

courts must enforce those terms as written.  See, e.g., Watson v. City of East Orange, 175 N.J. 442, 447 (2003); Kampf v. Franklin Life Ins. Co., 161 A.2d 717, 720-21 (N.J. 1960); City of Orange Twp. v. Empire Mortgage Servs., Inc., 775 A.2d 174, 179 (N.J. Super. Ct. App. Div. 2001); see also Pharmacia, 2006 WL 3533881, at *9.  The Court cannot rewrite the contract and make a better contract for the parties than that which they voluntarily made for themselves.  See, e.g., Rahway Hosp. v. Horizon Blue Cross Blue Shield of New Jersey, 863 A.2d 1050, 1056 (N.J. Super. Ct. App. Div. 2005); City of Orange, 775 A.2d at 179.

The language of section 1.1(d) of the SPA is clear and unambiguous.[14]  Section 1.1(d) states that Doremus shall pay Plaintiffs additional compensation "[i]n the event **[Doremus] shall sell** a majority of the stock or substantially all of the assets of the business of [Advanced] to an independent third party . . ."  See SPA § 1.1(d) (emphasis added).  Further, in section 1.1(d)(1), where the SPA provides how such additional compensation should be calculated, the SPA clearly articulates that this compensation is determined by taking "[Advanced's] revenues for the twelve (12) months preceding the sale **by** [Doremus] (emphasis added)," multiplying that amount by 1.5, and then multiplying the number again by .02.

Accordingly, the additional compensation provision is triggered when Doremus sells a

---

[14] While Plaintiffs rely on Tessmar v. Grosner, for the proposition that "[a]n agreement must be construed in the context of the circumstances under which it was entered into," 23 N.J. 193, 201 (1957), the Supreme Court of New Jersey has since clarified that "when the terms of a contract are clear and unambiguous, there is no room for construction and the court must enforce those terms as written." Watson v. City of East Orange, 175 N.J. 442, 447 (2003).  Here, Plaintiffs do not argue that the SPA is unclear or ambiguous. Rather, as discussed herein, Plaintiffs essentially ask the Court to re-write section 1.1(d) to cover this transaction because such necessarily resulted in a sale of Advanced to EnviroSolutions.  Even if the Court were inclined to consider the surrounding circumstances under which the SPA was entered into, "[s]uch evidence is adducible simply as a means of interpreting the writing – not for the purpose of modifying its terms." Id.

majority of the stock or substantially all of the assets of Advanced to an independent third party. In other words, Doremus must pay Plaintiffs additional compensation under section 1.1(d) of the SPA if <u>it</u> sells Advanced to an independent third party. Doremus never sold Advanced to EnviroSolutions (which is undisputably an independent third party).[15] Gordon Reger sold Doremus to EnviroSolutions, i.e., Doremus itself was acquired by EnviroSolutions. The parties to the SPA agreed to a clear and specific condition that simply did not occur.

Nevertheless, Plaintiffs, who do not dispute that Reger's sale of Doremus to EnviroSolutions is not covered by the plain language of the SPA, would have the Court re-write this provision to cover this transaction because such necessarily resulted in a sale of Advanced to EnviroSolutions. In particular, Plaintiffs argue that a "reasonable construction" of the additional compensation provision of the SPA would result in such being triggered upon any "effective transfer of the critical assets of Advanced to a third party." <u>See</u> Pl. Br. at 7, 9. According to Plaintiffs' theory, since Reger's sale of his interest in Doremus resulted in the "effective transfer of the critical assets of Advanced" to EnviroSolutions, Plaintiffs are entitled to additional compensation under the SPA.

This Court must enforce section 1.1(d) as written and thus, refuses to apply Plaintiffs' "reasonable" interpretation of same. Section 1.1(d) clearly does not entitle Plaintiffs to additional compensation upon Reger's sale of Doremus to EnviroSolutions. Reger was not a party to the SPA; therefore, putting restrictions on <u>his</u> sale of Doremus to EnviroSolutions would be inappropriate. Further, Plaintiffs' suggested interpretation of section 1.1(d) would result in

---

[15] In fact, Plaintiffs do not dispute Defendants' assertion that "Doremus still owns all of Advanced's stock and assets." <u>See</u> Def. Br. at 7.

their entitlement to additional compensation upon the transfer of the stock of any corporate parent of Advanced because such would result in the "effective transfer of the critical assets of Advanced." If Plaintiffs wished to receive additional compensation upon a sale **of** Doremus (i.e., a sale by Doremus's sole shareholder, Reger, of all of his stock in Doremus which would include a sale of all stock in Advanced), to a third party or upon the "effective transfer of the critical assets of Advanced," Plaintiffs should have negotiated and contracted for such rights. Plaintiffs are now upset that Defendants apparently structured this transaction to avoid triggering the additional compensation provision. However, nothing prevented Reger, Doremus, or EnviroSolutions from doing so. The Court cannot now re-write the SPA to entitle Plaintiffs to additional compensation in these circumstances or otherwise make a better contract for Plaintiffs than that which they voluntarily bargained for. Accordingly, Plaintiffs' breach of contract claim is dismissed with prejudice.

**B.     Remaining Claims**

Plaintiffs do not dispute that if their breach of contract claim against Doremus fails, the remaining claims against Defendants for fraudulent concealment, civil conspiracy, and fraudulent transfer, which are predicated on Doremus's breach of the SPA, must also be dismissed. Accordingly, the Court herein dismisses Plaintiffs' remaining claims.[16]

---

[16] Even if the Court improperly dismissed Plaintiffs' breach of contract claim against Doremus, for the reasons that follow, Plaintiffs' remaining claims would, in any event, be dismissed.

Plaintiffs' fraudulent concealment claim fails for a variety of reasons. First, there can be no fraudulent concealment absent a duty to disclose. See, e.g., United Jersey Bank v. Kensey, 704 A.2d 38, 43 (N.J. Super. Ct. App. Div. 1997) ("Silence in the face of a duty to disclose may constitute fraudulent concealment."). Plaintiffs claim that this duty *expressly* arose from the SPA. See Pl. Br. at 11. Such a duty is clearly not express in the SPA. Furthermore, even if the

**CONCLUSION**

  Based on the reasons stated herein, Plaintiffs' Complaint is dismissed with prejudice.

This matter is hereby closed. An appropriate Order accompanies this Opinion.


Date: December 19, 2007        /s/ Jose L. Linares
                    United States District Judge

---

Court should read such an obligation into the SPA, this duty to disclose only applies to Doremus because the other defendants were not parties to the SPA. Additionally, given Plaintiffs' position that any duty to disclose specifically arose from the SPA, Plaintiffs' fraudulent concealment claim against Doremus is intrinsic to the SPA and thus, cannot be pursued as a separate fraud claim. See, e.g., Gleason v. Norwest Mortgage, Inc., 243 F.3d 130, 144 (3d Cir. 2001) ("The New Jersey District Courts still hold that fraud claims not extrinsic to underlying contract claims are not maintainable as separate causes of action."); Emerson Radio Corp. v. Orion Sales, Inc., No. 95-6455, 2000 WL 49361, at *7 (D.N.J. 2000), aff'd in part, rev'd in part on other grounds, 253 F.3d 159 (3d Cir.2001) (explaining that the critical issue in determining whether a tort claim can be asserted alongside a breach of contract claim is "whether the allegedly tortious conduct is extraneous to the contract.").

  Plaintiffs' civil conspiracy claim also fails. Plaintiffs admit that their civil conspiracy claim requires a separate underlying tort as a prerequisite for liability. See, e.g., Pl. Br. at 14; In re Orthopedic Bone Screw Prods. Liability Litig., 193 F.3d 781, 789 (3d Cir. 1999). They claim that their fraud claim meets this requirement. See Pl. Br. at p. 14. Since the Court has dismissed Plaintiffs' fraud claim, their civil conspiracy claim also must be dismissed.

  Finally, Plaintiffs' fraudulent transfer claim must also be dismissed. Plaintiffs admit that their pleading of this count in the Complaint was wholly deficient. See Pl. Br. at 14-15. Further, this claim, as Plaintiffs have tried to explain it in their brief, see id., appears to be adequately encompassed by Plaintiffs' civil conspiracy and fraudulent concealment claims. Additionally, the remedy Plaintiffs seek in this count – to void "the sale by Reger to EnviroSolutions," (Compl. at p. 7) – is entirely inconsistent with Plaintiffs' reason for bringing this lawsuit, namely, their belief that the sale by Reger to EnviroSolutions triggered their entitlement to additional compensation under the SPA. If the Court were to void this transaction, Plaintiffs would clearly have no entitlement to additional compensation and this entire litigation would be moot.